UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARJORIE A. OLMSTEAD GROGG,


                                    Plaintiff,


v.                                                      5:11-CV-01381
                                                        (NAM/TWD)


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,


                                    Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
*Counsel for Plaintiff*
One Park Place
300 South State Street
Syracuse, NY 13202

HON. RICHARD S. HARTUNIAN                 ANDREEA LECHLEITNER, ESQ.
United States Attorney for the            Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                 MARY ANN SLOAN, ESQ.
Social Security Administration            Acting Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT AND RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Honorable

Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the decision of the Commissioner be affirmed and the complaint (Dkt. No. 1) be dismissed.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently forty-three years old with a date of birth of April 23, 1969. (T. at 30.[1]) The highest grade of education she completed was seventh grade. *Id.* at 31. She does not have a GED. *Id.* at 32. She most recently worked in an industrial laundry as a cleaner. *Id.* at 35. Prior to that job, she worked as a parking lot attendant and as a security officer for various security companies. *Id.* at 36-37. Plaintiff alleges disability due to bipolar disorder, epilepsy, multiple sclerosis, arthritis and a hand injury. *Id.* at 133, 138, 166-167.

Plaintiff applied for disability insurance benefits and SSI on July 21, 2010. *Id.* at 131-142. The application was denied on September 16, 2010. *Id.* at 66-85. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 86. The hearing was held on April 22, 2011. *Id.* at 26. On June 24, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. *Id.* at 10-25. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 23, 2011. *Id.* at 1. Plaintiff commenced this action on November 22, 2011. (Dkt. No. 1.)

---

[1]     Page references preceded by "T." are to the Administrative Transcript (*see* Dkt. No. 9.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2007).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough

to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

B.     **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors

justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

"Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## III.   THE ALJ'S DECISION

The ALJ first addressed when Plaintiff last met the insured status requirements. (T. at 13.) An individual must demonstrate the onset of disability on or before his date last insured in order to qualify for Social Security disability benefits. *Kohler*, 546 F.3d at 265. Here, the ALJ determined that Plaintiff's date last insured was December 31, 2004. (T. at 13.) Plaintiff makes no challenge to this determination.

The ALJ then made the following findings with regard to the period from Plaintiff's alleged

onset date of September 28, 2000, through her date last insured of December 31, 2004:

1.    The claimant engaged in substantial gainful activity in December of 2004, and from January 2007 to May 2007. *Id.* at 15-16.

2.    Plaintiff had the following "severe" impairments: degenerative disc disease of the cervical and lumbar spine and depressive disorder. *Id.* at 16-17.

3.    Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* at 17-18.

4.    Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work. *Id.* at 18-20.

5.    Plaintiff was capable of performing past relevant work as a parking lot attendant and security officer. *Id.* at 21.

6.    Considering Plaintiff's age, education, work experience, and transferable work skills, Plaintiff was not disabled under the framework of the Medical-Vocational Guidelines. *Id.* at 26-27.

## IV.   THE PARTIES' CONTENTIONS

Plaintiff makes the following claims:

1.    The ALJ erred by failing to develop the record. (Dkt. No. 12 at 10-15.[2])

2.    The ALJ's RFC finding is not supported by substantial evidence and is the product of legal error. *Id.* at 15-16.

3.    The ALJ erred by failing to properly assess the Plaintiff's credibility. *Id.* at 16-18.

4.    The ALJ erred by improperly determining Plaintiff's prior positions as past relevant work; that determination is not supported by substantial evidence and is the product of legal error. *Id.* at 18-21.

Defendant contends that the ALJ's decision applied the correct legal standards and is

supported by substantial evidence and thus should be affirmed. (Dkt. No. 13.)

---

[2]    Page numbers in citations to the parties' briefs refer to the page numbers assigned by the Court's electronic filing system.

## V.   DISCUSSION

### A.   Development of the Record

Plaintiff argues that the ALJ did not properly develop the record by (1) failing to order a consultative intelligence examination; (2) failing to request a substantial amount of relevant evidence, specifically, further treatment records from Syracuse Community Health Center ("SCHC"); and (3) failing to request a treating physician's opinion of Plaintiff's RFC. *Id.* at 10. In response, the Commissioner argues that a consultative intelligence exam was not necessary because the record is complete and fully developed such that the ALJ properly determined Plaintiff's mental functional capacity even without such an exam. (Dkt. No. 13 at 6-7.) Moreover, the Commissioner argues that the ALJ fulfilled his duty because, among other things, he made efforts to develop the record for the relevant period, including efforts to obtain the records of SCHC. *Id.* at 8-9. The Commissioner further counters that the ALJ properly evaluated and weighed the medical evidence in determining Plaintiff's RFC. *Id.* at 9-10. The Court agrees with the Commissioner.

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996) (citation omitted). If a gap exists in the administrative record then the plaintiff has not been afforded a full and fair hearing and the ALJ has failed in his or her duty to develop the administrative record. *Hankerson v. Harris,* 636 F.2d 893, 897 (2d Cir. 1980). Such a gap exists in the record when the ALJ bases a conclusion on evidence which is absent from the record or not fully developed within the record. *See, e.g., Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996). This duty, however, is not without limit. *See Guile v. Barnhart,* No. 5:07-CV-259 (GLS), 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). If all of the evidence received is consistent and sufficient to determine

whether a plaintiff is disabled, further development of the record is unnecessary, and the ALJ may

make his or her determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Thus, where

there are no "obvious gaps" in the record, the ALJ is not required to seek additional information.

*Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

    1.    Consultative Intelligence Examination

An ALJ has the discretion to order a consultative intelligence exam to develop the record

when the ALJ determines that he or she cannot get the information needed to form a conclusion based

solely on the medical sources within the record. 20 C.F.R. §§ 404.1519a(a) and 416.919a. As with

development of the record generally, "[a] consultative examination is unnecessary if the record

contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue,* No. 11-

CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

In this case, Plaintiff argues that the ALJ failed to develop the administrative record because

he did not order a consultative intelligence evaluation when there was "[e]vidence in the record

indicating the existence of a cognitive impairment." (Dkt. No. 12 at 11.) Plaintiff requested a

consultative intelligence examination with reading subtests due to evidence of cognitive impairments

such as limited seventh grade education and her involvement in special education classes. (T. 239.)

The ALJ noted he would look at the school records and other medical reports before deciding that

request. *Id*. at 29.

The Court finds Plaintiff's arguments unpersuasive because the record contains the opinion of

consultative examiner Dennis M. Noia, Ph.D., who estimated Plaintiff's intellectual functioning "[i]n

the low average range." *Id.* at 314. He went on to opine that while she had a depressive disorder and

was having some difficulty dealing with stress, her demeanor and responsiveness to questions was

cooperative.  *Id.* at 314-315.  She was capable of: understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; regularly attending to a routine and maintaining a schedule; learning new tasks; making appropriate decisions; relating to and interacting moderately well with others; and managing money.  *Id.* at 315.  State agency psychiatrist T. Inman-Dundon, MD corroborated Dr. Noia's findings and opined that Plaintiff had no severe mental impairments, including no mental retardation.  *Id.* at  331-347.

While Plaintiff does not have a GED, her school records showed that although most of her grades were poor, she obtained an A- in mathematics, B+ in health and Bs in resource class. *Id.* at 252-253.  It also showed "excessive absence affects grade" for some of her classes.  *Id.* at 255.  Plaintiff herself testified that she could read, although she had difficulty spelling, and she could add, subtract and multiply.  *Id.* at 31-33.  She reported to consultative examiners that her activities included reading.  *Id.* at 309, 315.  She held jobs such as a laundry worker, security guard and parking lot attendant where she testified she had to "take money, take tickets from people, write down license plates ... and ... had to make sure I cashed out and had everything every day as proper."  *Id.* at 36.  She also did temporary work in "management" for an auto mechanic shop "taking care" of "paperwork." *Id.* at 55-56.

Based on these reports, the Court finds that further development of the record was unnecessary regarding a consultative intelligence exam.  The ALJ had before him substantial, consistent evidence to gauge the Plaintiff's mental limitations and there were no obvious gaps in the record.

2.      Requesting Relevant Evidence (Records of Treating Provider SCHC)

Plaintiff next argues that the ALJ failed to request outstanding evidence from SCHC, as

identified from Plaintiff's submission of a pre-hearing case summary, for the dates of December 31, 2003 to November 26, 2006, and October 23, 2007 to present. (Dkt. No. 12 at 13; *see also* T. 245.) The Court is unpersuaded that the ALJ erred in this respect. First, the Regulations explicitly place the burden of supplying all relevant medical evidence on the claimant. 20 C.F.R. §§ 404.1512, 416.912(c). Moreover, the Disability Worksheet in the record shows that SCHC was contacted by the Commissioner with a records request of July 30, 2010. (T. at 296.) Records were received on August 19, 2010. *Id.* "All available records" were requested. *Id.* at 279. At the hearing, the ALJ left the record open for Plaintiff's counsel to submit additional records. *Id.* at 57. The ALJ even extended this deadline. *Id.* at 247. Thereafter, Plaintiff submitted evidence only from Crouse Hospital. *Id.* at 248. Thus, the ALJ provided ample opportunity to obtain any outstanding records from SCHC. Further, Plaintiff testified at her hearing on April 22, 2011, that she saw Dr. Smith at SCHC "about four years ago." *Id.* at 43. Then she "didn't end up going back to him ... [and] "... just finally went back to him again, back this past year ago...." *Id.* These later records from SCHC, if any, would have been generated well after the last date insured of December 31, 2004, and after the date of Plaintiff's application. Based upon all of the above, the ALJ did not err in failing to develop the record regarding SCHC.

      3.    <u>Treating Physician Opinion of RFC</u>

      Plaintiff next argues that there is no RFC from a treating physician and the ALJ was under a duty to re-contact Dr. Smith at SCHC to obtain a function-by-function analysis of Plaintiff's impairments. (Dkt. No. 12 at 14.) Plaintiff asserts that "the ALJ may not substitute his own judgment for a competent medical opinion." *Id.* Here, however, the ALJ relied on the consultative opinions of Kalyani Ganesh, MD and Dennis Noia, PhD, which were based upon their examinations

of Plaintiff. (T. at 309, 312.) The record also contains state agency psychological consultant Inman-Dundon, MD's opinion of Plaintiff's RFC. *Id.* at 345. All assessed Plaintiff's functional limitations upon which the ALJ relied. *Id*. at 18. The opinions of all three were consistent. *Id*. at 309, 312, 345. Because the record was sufficiently strong for the ALJ to make a disability determination, he was not obligated to further develop the record by requesting a function by function assessment from Dr. Smith. *See Washington v. Astrue,* No. 5:12-CV-39 (GLS), 2012 WL 6044877, at *2 (N.D.N.Y. December 5, 2012).

Additionally, a complete medical history consists of the records of medical sources covering at least the twelve months preceding the month in which the Plaintiff filed the application for benefits. *See* 20 C.F.R. §§ 404.1512(d), 416.912(d). Here, the treating sources identified by Plaintiff, including SCHC where Dr. Smith provided treatment, Crouse Hospital, Pieter Kark, MD, SUNY Health Science Center, and North Medical Center Family Physicians were contacted by the Commissioner. (T. 169-72, 296.) The records were made part of the administrative file and included more than the twelve month period before the July 1, 2010 date of Plaintiff's application.

As noted above, the lack of a medical source statement from a treating physician will not make the record incomplete, *see* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6), provided that the ALJ made his decision based on "sufficient" and "consistent" evidence – in this case the assessments of consultative sources Ganesh, MD, Noia, Ph.D., and Inman-Dundon, MD. (T. at 309, 312, 345.) *See* 20 C.F.R. §§ 404.1512(e), 416.912(e), 416.927(c)(1). For the foregoing reasons, including the sufficiency of the record without any obvious gaps, the ALJ did not violate his duty to develop the record. *Washington,* 2012 WL 6044877, at *3 (citation omitted).

**B.    Determination of Plaintiff's Residual Functional Capacity**

Plaintiff claims the ALJ erred in determining her RFC because he did not account for all the limitations of Dr. Noia, and he did not properly evaluate the opinion of Dr. Inmann-Dundon.  (Dkt. No. 12 at 15-16.)  At the heart of Plaintiff's argument is that the RFC finding of the ALJ is inconsistent with the limitations imposed by her mental condition.  The Commissioner argues that the ALJ's RFC finding is properly supported in the record.  The Court agrees with the Commissioner.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(a), 404.1569a.  Non-exertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citation omitted).  Further, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  S.S.R. 96-8p,

1996 WL 374184, at *7 (S.S.A.). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citation omitted).

      1.    <u>Opinion of Dr. Noia</u>

      Plaintiff claims the RFC does not reflect the limitations opined by Dr. Noia because the RFC states Plaintiff can "[r]elate to and interact appropriately with others, handle a reasonable level of simple, repetitive work-related stress, and perform work-related activities effectively under stress." (T. at 18.) Plaintiff claims that Dr. Noia opined that she "[h]ad moderate limitations relating to and interacting with other and has 'some' difficulty dealing with stress" and, therefore, the RFC is not consistent with Dr. Noia's opinion. (Dkt. No. 12 at 15.)

      Initially, Plaintiff misreads Dr. Noia's opinion with regard to interacting with others which states "she appears to be able to relate to and interact *moderately well* with others." (T. at 315; emphasis supplied.) The ALJ did note Dr. Noia's finding that claimant had "some difficulty dealing with stress," but that her prognosis was "fair." (T. at 20, 315.) The Court does not find this inconsistent with the ALJ's determination regarding the impact of Plaintiff's mental limitations, nor does the determination lack support of substantial evidence. Dr. Noia diagnosed Plaintiff as suffering from a depressive disorder, but concluded that she was nonetheless capable of following, understanding, and remembering simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a schedule, learning new tasks, and making appropriate decisions. The ALJ clearly considered this information in making his determination. *Id.* at 20.

2.    Opinion of Dr Inman-Dundon

Plaintiff also maintains that the ALJ erred in affording "some weight" to the opinion of state

psychiatrist, Dr. Inmann-Dundon, who opined that the Plaintiff had "moderate difficulties in

maintaining concentration, persistence, or pace." (Dkt. No. 12 at 16; *see also* T. at 341.)  Plaintiff

maintains the ALJ's RFC does not reflect this limitation because the RFC indicates Plaintiff can

"maintain attention and concentration for tasks." (T. at 18.)  Again, Plaintiff's argument fails.

Initially, the Court reiterates the ALJ's finding in this regard is supported by Dr. Noia's

opinion that Plaintiff was capable of "maintaining attention and concentration for tasks." *Id.* at 315.

Next, the ALJ's determination also finds support in the further opinion of Dr. Inman-Dundon, who in

the evaluation of September 13, 2010, found that Plaintiff had moderate limitations in only two out of

twenty designated categories of mental functioning - the ability to carry out detailed instructions and

the ability to respond appropriately to changes in the work setting.  *Id.* at 345-346.  Dr. Inman-

Dundon concluded that Plaintiff was not significantly limited in eighteen of the other categories.  *Id.*

The state psychiatrist also found the Plaintiff retained the ability to perform work with simple tasks.

*Id.* at 347.  This is consistent with the ALJ's determined RFC.

**C.    Plaintiff's Credibility**

In arriving at his determination, the ALJ found Plaintiff's claims about her disabling

symptomology not fully credible based upon the medical record and, in part, on her allegation that she

became unable to work in September 2000, but she did not completely stop working until January 3,

2010.  *Id.* at 19.  Plaintiff alleges another inconsistency in the ALJ's finding of her credibility because

he found her medically determinable impairments could cause the symptoms, but that she failed to

substantiate her subjective allegations of disabling symptoms as required by the Social Security Act.

(Dkt. No. 12 at 15; *see also* T. at 19.)  Plaintiff also claims the ALJ failed to apply the appropriate

legal standard.  (Dkt. No. 12 at 16.)  The Court disagrees with the Plaintiff.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical

evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his

or her reasons 'with sufficient specificity to enable us to decide whether the determination is

supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)

(quoting *Gallardo v. Apfel*, No. 96 Civ. 9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25,

1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a

two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2007); *see also Foster v.

Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) and S.S.R.

96-7p.  First, the ALJ must consider whether there is an underlying medically determinable physical

or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other

symptoms.  S.S.R. 96-7p.  This finding does not involve a determination as to the intensity,

persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no

impairment is found that could reasonably be expected to produce the symptoms, the claimant's

symptoms cannot be found to affect the claimant's ability to do basic work activities.  An individual's

statements about his or her symptoms are not enough by themselves to establish the existence of a

physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be

expected to produce the claimant's pain or other symptoms has been established, the second step of

the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or

symptoms to determine the extent to which they limit the claimant's ability to perform basic work

activities. *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone. *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3) (2007).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, No. 96 Civ. 9718 (MBM), 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

In this case, the ALJ noted that Plaintiff suffered from medically determinable impairments that could reasonably be expected to cause her alleged symptoms. (T. at 19.) The ALJ nonetheless rejected Plaintiff's complaints as not being credible, finding they were unsubstantiated by clinical evidence in the record, including reports from her treating providers as well as the consultative reports of Dr. Ganesh, Dr. Noia and Dr. Inman-Dundon, and due to the level of activity performed by her in

her daily life. *Id.* at 16-20. The basis for the ALJ's rejection in this regard is adequately stated and draws ample support from substantial evidence in the record.

For example, the ALJ considered Plaintiff's activities of daily living and found they were only mildly limited. *Id.* at 17. The records show that in September 2005, after the last date insured, she "works doing home remodeling" and "is very physically active." *Id.* at 270. During the time she alleges she was disabled, Plaintiff worked in a commercial laundry as a cleaner; she worked as a parking lot attendant; and she worked as a security guard. *Id.* at 35-38, 149, 167, 187-88. She did paperwork on an ad hoc basis for an auto body shop. *Id.* at 55. She did not stop working because of her medical problems, but rather because of child care issues and the end of temporary work arrangements. *Id.* at 15, 37, 187-88. In August 2010, Plaintiff reported that during the day she drove a friend to work, cleaned the house, and cooked dinner. *Id.* at 201. In September 2010, she cooked daily, did laundry, shopped, showered and dressed herself daily. *Id.* at 309, 314.

Medical records show Plaintiff was treated for back pain by Dr. Pieter Kark on five treatment dates between January and May 1998, and he prescribed medications. *Id.* at 349-356. She was also prescribed Neurotonin, Depakote, Effexor and folic acid, but stopped taking them shortly after she alleges her disability began. *Id.* at 181, 271. She was not taking any medications in September 2010, although treating source Dr. Smith prescribed Paxil in 2007. *Id.* at 280, 309, 313. As of September 2, 2010, she had not seen a doctor since 2008. *Id.* at 308.

Thus, the court finds substantial evidence in the record on which the ALJ based his determination of Plaintiff's credibility and that the correct legal standard was applied.

### D.      Plaintiff's Past Relevant Work

At step four of the sequential evaluation, the ALJ found that Plaintiff was capable of

performing her past relevant work as a parking lot attendant and security officer. *Id.* at 21. Plaintiff

initially asserts these positions were not substantial gainful activity based upon her earnings therefrom

and, as such, not past relevant work. Alternatively, Plaintiff argues that the ALJ did not properly find

that Plaintiff could perform her past relevant work given her RFC. The Commissioner argues that

Plaintiff's work as a parking lot attendant was properly considered past relevant work, and the ALJ

properly found she could perform the requirements of that job. The Court again agrees with the

Commissioner.

Plaintiff stated she worked as a parking lot attendant from January 2007 to May 2007, but did

not provide specific beginning and ending dates for that work despite that information being

requested of her in writing and at her hearing. *Id.* at 37, 167, 184-191. However, Plaintiff

consistently stated she worked as a parking lot attendant eight hours per day, five days per week, and

earned eight dollars per hour. *Id.* at 177, 187, 216. Thus, notwithstanding information as to the exact

start and end date of that job, she would have earned $1280 per month in February, March and April

2007, well above the $900 per month earnings requirement for substantial gainful activity in 2007.[3]

*See* SSA Programs and Operations Manual (POMS) DI 10501.015; *see also* D1. 25001.001(B)(83).

Therefore, the Plaintiff's work as a parking lot attendant was substantial gainful activity qualifying as

past relevant work.

At step four in the analysis, the ALJ must consider whether the plaintiff has the RFC to

perform his or her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). In order to survive step four,

"the claimant has the burden to show an inability to return to her previous specific job *and* an inability

---

[3]       The parties agree the relevant earning threshold for 2007 is $900 per month. (Dkt.
No. 12 at 16; Dkt. No. 13 at 20.)

to perform her past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). Here, the ALJ found that Plaintiff could perform her past relevant work as a parking lot attendant as "actually and generally performed." (T. at 21.)

In determining whether a claimant can perform his or her past relevant work as generally performed, "[t]he inquiry ... is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work." *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir. 2004) (finding that plaintiff could perform her prior work as a computer operator because she could perform the sedentary work required of her "previous 'type' of work," even though she could not sit continuously for eight hours as specifically required by her previous job (citation omitted)).

The *Dictionary of Occupational Titles* ("DOT") is used to describe jobs "as they are generally performed," *Jasinski,* 341 F.3d at 185, and the Commissioner is permitted to take administrative notice of the DOT. *See* 20 C.F.R. §404.1566(d)(1); *see also Petrie v. Astrue*, 412 Fed.Appx. 401, 409-10 (2d Cir. 2011) (summary order) (finding that an ALJ can rely on a DOT job classification to characterize plaintiff's past work as "unskilled" without consulting a vocational expert). The DOT classifies the position of parking lot attendant as "light work." DOT Code § 915.473-010. According to the DOT, the job involves parking automobiles, collecting parking fees, taking parking tags, with a specific preparation of two, which is unskilled. *Id.*

The DOT classifications, therefore, establish that Plaintiff's past relevant work as a parking lot attendant, as generally performed, is a light work position. *See Jasinski,* 341 F.3d at 185; *Jock v. Harris,* 651 F.2d 133, 135 (2d Cir. 1981). Accordingly, the ALJ properly found that Plaintiff's ability

to perform light work enables her to perform her past relevant work as a parking lot attendant as generally performed, and the Plaintiff failed to satisfy her burden of proving that she cannot perform this past relevant work. *See Halloran,* 362 F.3d at 33.

Because the ALJ's finding that Plaintiff could perform this past relevant work as a parking lot attendant as generally performed is sufficient to negate a finding of disability at step four, it is not necessary for the Court to determine whether Plaintiff could perform her past relevant work as actually performed. *See Jasinski,* 341 F.3d at 185; *Jock,* 651 F.2d at 135; *Halloran*, 362 F.3d at 33. The court nonetheless also concludes that the ALJ's finding that Plaintiff could perform her past position as a parking lot attendant as actually performed is supported by substantial evidence.

Plaintiff testified that as a parking lot attendant, she worked at a lot near a medical facility "[w]here the doctors are and I had to give them tickets, take money, take tickets from people, write down license plates, walk around the lot to make sure any unauthorized vehicles were not parked. And I had to make sure I cashed out and had everything every day as proper." (T. at 36.) She worked the parking lot job from sometime in January 2007 to approximately June 2007, during the time she alleges her disability here, and quit because she "[h]ad issues at home to deal with ..." as opposed to any claimed job stress or depressive condition. *Id.* at 37. She reported that the job entailed sitting for four hours, lifting up to twenty pounds, and did not entail climbing, kneeling, crawling, crouching. *Id.* at 216.

Given Plaintiff's testimony regarding her job description and duties as a parking lot attendant, and comparing the DOT's description of the job, and further considering she was working this job during the time she alleges she was disabled, the ALJ's finding that Plaintiff could do the work as actually performed is reasonable and based upon substantial evidence in the record.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 12, 2013
       Syracuse, New York

                                          Therese Wiley Dancks
                                          United States Magistrate Judge